## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

MICHAEL C.,

        *Plaintiff,*

*v.*

COMMISSIONER OF SOCIAL
SECURITY,

        *Defendant.*

_____/

Case No. 1:23-12472

Patricia T. Morris
United States Magistrate Judge

## MEMORANDUM OPINION AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 13)

## I.    CONCLUSION

For the reasons set forth below, Plaintiff Michael C.'s Motion for Summary Judgment will be **DENIED** (ECF No. 9), Defendant the Commissioner of Social Security's Motion for Summary Judgment will be **GRANTED** (ECF No. 11), and the final decision of the Administrative Law Judge ("ALJ") will be **AFFIRMED**.

## II.    ANALYSIS

### A.    Introduction and Procedural History

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on November 12, 2021, alleging that he became disabled on October 25, 2021. (ECF No. 10, PageID.395, 596–609). The Commissioner denied

the applications initially in March 2022, and on reconsideration in July 2022.  (*Id.* at PageID.395, 453–92, 512–18).  Plaintiff requested a hearing before an ALJ which took place on November 10, 2022.  (*Id.* at PageID.395, 409–52).  The ALJ issued a decision on December 28, 2022, finding that Plaintiff was not disabled.  (*Id.* at PageID.392–408).  And the Appeals Council denied review on July 27, 2023.  (*Id.* at PageID.379–83).

Following the Appeals Council's decision, Plaintiff sought judicial review on September 29, 2023.  (ECF No. 1).  The parties consented to the Undersigned "conducting any or all proceedings in this case, including entry of a final judgment on all post-judgment matters."  (ECF No. 6).  The parties have filed cross-motions for summary judgment (ECF Nos. 11, 13) and Plaintiff did not file a timely response.

## B.    Standard of Review

The Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  "[T]he threshold for

2

such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

(i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 3336 F.3d 469, 474 (6th Cir. 2003).  The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the

relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 214 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 10, PageID.392–408). At Step One, the ALJ found Plaintiff met the insured status requirements through June 30, 2023, and that Plaintiff had not engaged in substantial gainful activity ("SGA") since October 25, 2021, the alleged onset date. (*Id.* at PageID.397). At Step Two, the ALJ found the following impairments severe: bipolar I disorder, generalized anxiety disorder, cannabis use disorder, and alcohol use disorder. (*Id.*). At Step Three, she found that none of the impairments, either independently or in combination, met or medically equaled in severity or duration the criteria of any listing. (*Id.* at PageID.398).

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following

non-exertional limitations:

- Simple, routine work that requires only simple decisions and no complex decisions;
- Low stress work, which is work that has less than occasional changes in the work routine and setting, and does not require production-rate pace/hourly quotas; and
- Occasional interaction with supervisors, co-workers, and the general public.

(*Id.* at PageID.399).

At Step Four, the ALJ found that Plaintiff had no past relevant work experience.  (*Id.* at PageID.403).  Finally, at Step Five, the ALJ determined that Plaintiff could perform a significant number of jobs in the economy, which included work as a hand packager, a laundry worker, and an assembler.  (*Id.* at PageID.403–04).  Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, at any time from October 25, 2021, through the date of the decision.  (*Id.* at PageID.404).

### E.    Administrative Record

This case involves a single issue: whether the ALJ committed legal error requiring reversal by failing to evaluate the supportability and consistency of the medical opinions from the providers who evaluated Plaintiff while he received outpatient mental health treatment.  Although the entire record has been reviewed by the Undersigned, references to the record will be limited to this single issue as part of the analysis below.

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B) (2012).  The newly promulgated regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources.

An acceptable medical source means a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor);

(2) Licensed Psychologist, which includes:

    (i)    A licensed or certified psychologist at the independent practice level; or

    (ii)    A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5) Qualified speech-language pathologist for speech or language impairments only.  For this source, qualified means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only [];

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice []; or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice [].

20 C.F.R. § 404.1502(a) (2021).  A medical source is

an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

*Id.* § 404.1502(d).  In contrast, a nonmedical source is "a source of evidence who is not a medical source."  *Id.* § 404.1502(e).  "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy."  *Id.*

The Social Security Administration ("SSA") "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from [the claimant's] medical sources." *Id.* § 404.1520c(a). "The most important factors [the SSA] consider[s] when [it] evaluate[s] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.*

The first factor is "supportability." For this factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the opinion. In essence, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the source's "[r]elationship with [the]

claimant[.]" *Id*. § 404.1520c(c)(3).  This factor will include the analysis of:

(i)   Length of the treatment relationship.  The length of time a medical source has treated [the claimant] may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(ii)  Frequency of examinations.  The frequency of [the claimant's] visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(iii) Purpose of the treatment relationship.  The purpose for treatment [the claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(iv)  Extent of the treatment relationship.  The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(v)   Examining relationship.  A medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder[.]

*Id.*

The fourth factor of the SSA's analysis is "specialization."  In making this determination, the SSA will consider

[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

*Id.* § 404.1520c(c)(4).

Finally, the SSA will consider "other factors." These may include any other information that "tend[s] to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(5). Other factors include "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, [it] will also consider whether new evidence [it] receive[s] after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement,

> [b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record.

*Id.* § 404.1520c(b)(1).

> Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

*Id.* The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors [the SSA] consider[s] when [it] determine[s] how persuasive [it] find[s] a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2). As such, the SSA

> will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision. [The SSA] may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [it] articulate[s] how [it] consider[s] medical opinions and prior administrative medical findings in [the claimant's] case record.

*Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported," and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions or prior

12

administrative medical findings in [the claimant's] determination or decision." *Id.*
§ 404.1520c(b)(3).  The regulations clarify that the SSA is "not required to articulate
how [it] considered evidence from non-medical sources using the requirements of
paragraphs (a) through (c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider
"evidence that is inherently neither valuable nor persuasive" and "will not provide
any analysis about how [it] considered such evidence in [its] determination or
decision, even under § 404.1520c." *Id.* § 404.1520b(c).  The regulations categorize
evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other
governmental and nongovernmental entities;" "[d]isability examiner findings,"
meaning "[f]indings made by a State agency disability examiner made at a previous
level of adjudication about a medical issue, vocational issue, or the ultimate issue
about whether [the claimant is] disabled;" and "[s]tatements on issues reserved to
the Commissioner[,]" including

    (i)    Statements that [the claimant] [is] or [is] not disabled, blind, able
to work, or able to perform regular or continuing work;

    (ii)    Statements about whether or not [the claimant's] impairment(s)
meets or medically equals any listing in the Listing of
Impairments[];

    (iii)    Statements about what [the claimant's] residual functional
capacity is using [the SSA's] programmatic terms about the
functional exertional levels [] instead of descriptions about [the
claimant's] functional abilities and limitations[];

> (iv)    Statements about whether or not [the claimant's] residual functional capacity prevents [the claimant] from doing past relevant work[];
>
> (v)    Statements that [the claimant] [does] or [does] not meet the requirements of a medical-vocational rule[]; and
>
> (vi)    Statements about whether or not [the claimant's] disability continues or ends when [the SSA] conduct[s] a continuing disability review[.]

*Id.* § 404.1520b(c).

> The regulations also provide that
>
> [b]ecause a decision by any other governmental and nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on [the SSA] and is not [its] decision about whether [the claimant is] disabled or blind under [SSA] rules.

*Id.* § 404.1504.   Therefore, the SSA "will not provide any analysis in its determination or decision about a decision made by any other governmental or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to benefits." *Id.*  The SSA will, however, "consider all of the supporting evidence underlying the other governmental or nongovernmental entity's decision that [it] receive[s] as evidence in [a] claim[.]" *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f).  Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)." *Id.*  Further, "[s]igns must be shown by

medically acceptable clinical diagnostic techniques.  Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated."  *Id.* § 404.1502(g).  Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques[,]" and "diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as x-rays), and psychological tests."  *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain.

> In considering whether [the claimant is] disabled, [the SSA] will consider all [the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The SSA] will consider all [the claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [his or her] ability to work[.]

*Id.* § 404.1529(a).  But the SSA clarified that

> statements about [the claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled.  There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be

15

expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence about [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

*Id.* § 404.1529(a).

Further, "[i]n evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the SSA] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]." *Id.* § 404.1529(a). The SSA clarified that it will "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [it] will carefully consider any other information [the claimant] may submit about [his or her] symptoms." *Id.* § 404.1529(c)(3). This other information may include "[t]he information that [the claimant's] medical sources or nonmedical sources provide about [the claimant's] pain or other symptoms," such as "what may precipitate or aggravate [the claimant's] symptoms, what medications, treatments or other

methods [the claimant uses] to alleviate them, and how the symptoms may affect

[the claimant's] pattern of daily living," which "is also an important indicator of the

intensity and persistence of the claimant's symptoms." *Id.*

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . [The SSA] will consider all of the evidence presented, including information about [the claimant's] prior work record, [the Claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] medical sources, and observations by [the SSA's] employees and other persons[.]

*Id.* The regulations establish that "[f]actors relevant to [a claimant's] symptoms,

such as pain, which [it] will consider include []:

> (i)      [D]aily activities;
>
> (ii)     The location, duration, frequency, and intensity of . . . pain;
>
> (iii)    Precipitating and aggravating factors;
>
> (iv)     The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
>
> (v)      Treatment, other than medication, . . . received for relief of . . . pain;
>
> (vi)     Any measures . . . used to relieve . . . pain.

*Id.*

The new regulations also impose a duty on the claimant: "[i]n order to get

benefits, [the claimant] must follow treatment prescribed by [his or her] medical

Case 1:23-cv-12472-PTM   ECF No. 14, PageID.1431   Filed 01/28/25   Page 18 of 24

source(s) if this treatment is expected to restore [his or her] ability to work." *Id.* §

404.1530(a). Stated differently, "[i]f [the claimant does] not follow the prescribed

treatment without a good reason, [the SSA] will not find [the claimant] disabled or,

if [the claimant is] already receiving benefits, [the SSA] will stop paying . . .

benefits." *Id.* § 404.1530(b). Acceptable (or "good") reasons for failure to follow

prescribed treatment include:

> (1) The specific medical treatment is contrary to the established teaching and tenets of [the claimant's] religion;
>
> (2) The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;
>
> (3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;
>
> (4) The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for [the claimant]; or
>
> (5) The treatment involves amputation of an extremity, or major part of an extremity.

*Id.* § 404.1530(c).

## G. Argument and Analysis

As stated above, this case involves a single issue: whether the ALJ committed

legal error requiring reversal by failing to evaluate the supportability and consistency

18

of the medical opinions from the providers who evaluated Plaintiff while he received outpatient mental health treatment.  While Plaintiff's brief could be clearer on this point, it appears his primary contention is that the ALJ should have considered his providers' treatment notes containing global assessment of functioning ("GAF") scores as medical opinions and then undertaken the required analysis for such opinions.

Conversely, the Commissioner argues that "ALJs are not required to explicitly discuss GAF scores in the[ir] decision[s]."  (ECF No. 13, PageID.1408).  In support of this argument, the Commissioner cites numerous cases where courts criticized the value of GAF scores including *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002).  (*Id.*).

To contextualize the parties' arguments, it is necessary to begin with a discussion of how consideration of GAF scores has changed since 2013.

On July 22, 2013, the SSA issued Administrative Message 13066 (AM-13066), which "provided instructions to adjudicators on the use of the GAF, noting that it is not a medical finding but is non-standardized opinion evidence relating only to a specific point in time that 'needs supporting evidence to be given much weight,' and limiting its utility in determining disability."  3 Soc. Sec. Disab. Claims Prac. & Proc. § 28:12 (2nd ed. 2024); *see also Cunningham v. Comm'r of Soc. Sec.*, No. 3:19-CV-00314-SKL, 2020 WL 3229289, at *5 (E.D. Tenn. June 15, 2020)

(explaining that AM-13066 has "since been revised twice, though the parties do not argue the newer versions differ in any material way from the original"). AM-13066 "note[d] several problems with using GAF scores to evaluate disability, such as the fact that the GAF scores are not standardized, they are not designed to predict the outcome of treatment, and the GAF scores are very general and therefore need sufficient supporting detail to have any significant meaning." *Yee v. Comm'r of Soc. Sec.*, No. 17-CV-10328, 2018 WL 2181466, at *6 (E.D. Mich. Jan. 31, 2018), *report and recommendation adopted*, 2018 WL 1250478 (E.D. Mich. Mar. 12, 2018). "Despite these flaws, AM-13066 provide[d] that *a GAF score [wa]s a medical opinion under the Regulations* and that it should be considered by the ALJ in conjunction with all of the other relevant record evidence when assessing disability claims involving mental disorders." *Id.* (emphasis added); *see also Stowers v. Saul*, No. 3:19-CV-443-HBG, 2021 WL 784137, at *4 n.2 (E.D. Tenn. Mar. 1, 2021) ("One difference the administrative message established is that GAF scores assigned by 'acceptable medical sources' are now to be considered 'medical opinions.' " (citation omitted)).

Other district courts in this Circuit then grappled with the proper application of AM-13066 given that it "appear[ed] to conflict with Sixth Circuit case law that ALJs are not required to consider GAF scores." *Beckett v. Comm'r of Soc. Sec.*, No. 1:17-CV-303, 2019 WL 183830, at *4 (E.D. Tenn. Jan. 14, 2019). The

20

Commissioner cites one such case in support of the argument that the ALJ was not required to explicitly consider Plaintiff's GAF scores.  (ECF No. 13, PageID.1408). In that case, the Sixth Circuit stated that "the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate." *Howard*, 276 F.3d at 241.  However, as the *Beckett* court explained, "AM-13066 is a new policy that is contrary to this Circuit's prior policy," and thus found that under the new policy (AM-13066), "the ALJ was required to discuss the weight given to Dr. Ofenloch's GAF rating, given that Dr. Ofenloch was the claimant's treating physician."  2019 WL 183830, at *4.

However, in the years since the issuance of AM-13066, the first two revisions to it, and the first cases applying it, there have been major changes to the regulations concerning evaluation of medical opinions.  In light of these changes, the SSA revised AM-13066 again in 2017.  It now provides "that 'for claims filed on or after March 27, 2017, [the SSA] consider[s] a GAF score' not as [a] medical opinion[] but rather as 'other medical evidence.' " *Tiffany T. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00626-MPS, 2023 WL 10949091, at *11 (D. Conn. Sept. 1, 2023) (citation omitted), *report and recommendation adopted*, 2024 WL 1230256 (D. Conn. Mar. 22, 2024).  Accordingly, "ALJs need not evaluate the GAF scores under the persuasiveness factors as required of medical opinions." *Coats v. Kijakazi*, No. 8:21-CV-01762-AEP, 2023 WL 2706857, at *12 (M.D. Fla. Mar. 30, 2023).

Here, Plaintiff appears to argue that the ALJ should have evaluated his providers' treatment notes, and the GAF scores contained within them, as medical opinions. While this argument may have prevailed under earlier versions of AM-13066, it does not under the current version. Plaintiff applied for benefits after March 27, 2017, meaning that the ALJ was required to consider the treatment notes, including the GAF scores that they contain, as other evidence rather than as medical opinions. "As such, [the treatment notes] may be used to demonstrate consistency (or lack thereof) with other opinion evidence, but they are not themselves medical opinions." *Nichols v. Comm'r of Soc. Sec.*, No. 1:23-CV-02063-CEF, 2024 WL 3387289, at *12 (N.D. Ohio June 21, 2024).

The ALJ provided the following overview of Plaintiff's medical history:

On [October 25, 2021,] the alleged onset date, [Plaintiff] presented to the hospital after developing auditory hallucinations, paranoia, and decreased sleep. Throughout a five-day admission, he cooperated with all treatment, including group therapy. By discharge, he had a normal clinical presentation and reported improvement in his symptoms.

Over the following month, he returned to the hospital on at least four more occasions, each time reporting anxiety, suicidal thoughts, decreased sleep, anger, and hallucinations. Clinically, he presented as anxious, hyperactive, and depressed. His symptoms abated after medication administration, but he failed to achieve long-term relief. Given the frequent recurrence of his symptoms, doctors in the emergency room ended up recommending inpatient psychiatric treatment.

To that end, from November 11 through November 23, 2021, [Plaintiff] completed an inpatient admission at Havenwyck. On admission, [Plaintiff] related racing thoughts, paranoia, marked mood changes,

> hallucinations, and increased agitation and threatening behavior toward
> his family.  Relatedly, he exhibited bland affect, labile mood, pressured
> speech, paranoid behavior, and flight of ideas with grandiosity.  Over
> the course of this hospitalization, doctors tried several medication
> combinations in an effort to achieve improvement and stability.  They
> finally found success with Invega injections and Seroquel.  Upon
> discharge, [Plaintiff's] symptoms had significantly improved and he
> seemed much more stable.  Doctors recommended that he establish
> outpatient treatment at New Oakland, where he could receive
> monitoring of his medication regimen as well as psychotherapy.

(ECF No. 10, PageID.400 (internal record citations omitted) (citing ECF No. 10, PageID.722–856, 1041–1330)).  Plaintiff commenced the recommended outpatient treatment at New Oakland, and the administrative record includes treatment notes from his New Oakland providers dated through September 1, 2022.  (*Id.* at PageID.857–1030, 1339–66).  The administrative record does not, however, contain any medical *opinions* from his New Oakland providers.

As previously stated, Plaintiff only raises one issue on appeal: whether the ALJ "committed reversible legal error by failing to evaluate the supportability and consistency of the medical opinions of his treating provider at New Oakland Family Services."  (ECF No. 11, PageID.1379).  The two cases that he discusses at length, *Devin W. v. Comm'r of Soc. Sec.*, No. 2:23-CV-962, 2024 WL 177288 (S.D. Ohio Jan. 17, 2024), *report and recommendation adopted*, 2024 WL 691388 (S.D. Ohio Feb. 20, 2024) and *Heredia v. Kijakazi*, No. 22-16653, 2023 WL 8449242 (9th Cir. Dec. 6, 2023), primarily discuss flaws with the ALJ's evaluation of opinion evidence from the plaintiff's treating providers.  Again, the administrative record for this case

23

contains *no opinion evidence* from Plaintiff's treating providers, and the ALJ cannot be said to have improperly evaluated evidence that does not exist.

To the extent that Plaintiff tangentially references other issues in his motion, the Undersigned concludes that such references are insufficient to actually raise the issues. *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal citations omitted)). Thus, Plaintiff's brief mentions of possible issues, including the ALJ's duty to develop the record and the accuracy of the RFC, are deemed waived.

## III.   **ORDER**

For these reasons, Plaintiff's motion (ECF No. 9) is **DENIED**, the Commissioner's motion (ECF No. 11) is **GRANTED**, and the ALJ's decision is **AFFIRMED**.

Date: January 28, 2025                         S/PATRICIA T. MORRIS
                                               Patricia T. Morris
                                               United States Magistrate Judge